Good morning. Good morning, Your Honor, and may it please the Court. My name is Eric Miller, and I represent Mercer Canyons. The District Court's order certifying the class in this case rested on several legal errors that independently require reversal of the order. The ones I'd like to begin with are the Court's misinterpretation of the statutes creating the causes of action in this case, the Agricultural Workers Protection Act and the Washington Consumer Protection Act. Under Walmart, in identifying a common question, what the Court needs to look for is not just the existence of some common question, but the capacity of a class-wide proceeding to generate common answers to those questions that will drive the resolution of the litigation. And so the first step in that analysis, as this Court has recognized in cases like Abdullah, is figuring out what the governing law is, because when you look at the question that the Court asked in this case, which is whether Mercer Canyons had a policy of avoiding an obligation to provide information about H-2A jobs, that is a question that will drive the resolution of the litigation only if there is, in fact, such an obligation under the statutes. The starting point has to be an analysis of the statute. Isn't that the way complaints are pled? Sometimes people allege things that may not turn out to be true. They have alleged there is such a policy. Hypothetically, if there were one, what would be wrong with the district court's conclusion about that question? If there were such a policy as a factual matter, that would not drive the resolution of the litigation, because a policy of not providing information does not tell us whether Mercer is liable if, as we read the statute, the statute doesn't require them to provide any information. That has to do with the reading of the statute. If you read the statute, it's an affirmative obligation, then you'd have a problem, would you not, if that turned out to be true? Yes. If you accept that, then we have other arguments about factual commonality. But, yeah, the starting point has to be, did the district court read the statute correctly or not? The Agricultural Workers Act, that has a prohibition on providing false and misleading information. The district court found that could include or may include a material omission. This is really an omission case as opposed to a commission case. This is definitely an omission case. Really, what you're saying is providing false or misleading information does not include a subset of omitting to provide information you were supposed to provide. Yes. The way we know that is by looking at the language of the statute, knowingly provide false or misleading information. Let me ask you this. There are no cases on this, right? Right. So this is a statute that needs to be construed, right? Yes. So the question then is, as my colleague has suggested, if you have a statute that bans doing something, but the negative pregnant of that gets to the same result, why would that be a misconstruction of the statute to avoid an omission? For example, in the securities law, clearly an omission to state a material fact is as bad as misstating a material fact. Why should this be treated differently? The reason is the statutory context. We're talking about subsection E of 1831. Subsections A, B, and C are all affirmative disclosure provisions. Those are the provisions in which Congress said, here's the information we want people to have, and you, employer or recruiter, have an obligation to provide that information. And they say who you provide the information to and how you provide it. E doesn't have any of those components. E does not say who you have to tell about the jobs, and that's one of the big flaws in the district court's analysis is that taking plaintiff's position and the court's position literally, the statute says any seasonal agricultural worker, so no one could possibly comply with the statute if you have to tell any seasonal agricultural worker about the existence of a job. Is there a posting that's done with this or any kind of publication? There are the H-2A program regulations, which of course plaintiffs are not suing under, but those regulations have very detailed requirements about posting. You have to put a certain number of newspaper advertisements out. You have to list the job with the state agency and accept referrals that way. So let's just say that, and it's arguendo, if that posting were done and you decided, your client had decided not to provide information about these H-2A jobs intentionally and they were not included in the posting, why would that not solve your problem of who you tell? To be clear, that would violate the H-2A program, and the Department of Labor is quite active in enforcing those regulations and pursuing administrative sanctions against employers that violate the rules. I think we would expect that to happen in that situation. I guess my point, counsel, is this isn't into a vacuum. There is a method of communicating to the potential beneficiary, the potential users of this information through postings. That's in the H-2A regulations. It's not in 1831E. The other salient feature of 1831E that I would point the court to is that it is not a prohibition on providing false or misleading information about anything. You can't knowingly provide false or misleading information about the things that are required to be disclosed by subsections A, B, and C. So why isn't the opposite also included in it? You can't materially omit information that you were required to provide. In other words, isn't your reading a little too strict, and you're saying, well, you can't lie. You can't give false information about what you're supposed to tell them. So you can't say, oh, we're not paying H-2A workers $12 an hour. You would agree the employer cannot do that, because that would be false and misleading when they were paying them $12 an hour. Right. But not saying it at all, omitting that material information. You're saying it doesn't fall within the statute. The omission, if you omit information that's required under A, B, or C, you're going to be violating A, B, or C. So what E really does, and I think you take a step back and look at the overall structure and the purpose of the statute, the legislative history makes clear, and the text of the statute too, that the core concern that Congress had in mind is essentially a bait and switch, that unscrupulous employers or recruiters induce workers to come out to their location, maybe traveling a great distance at some expense, by promising a particular kind of job, and then the conditions are worse than what they told them. So the way that the statute deals with that is subsections A, B, and C say, you have to give them in writing. Here are the true facts about what you'll be getting. And if that was all you had, an unscrupulous employer could say, okay, here's the disclosure, but by the way, and then make a whole bunch of other false promises separate from the disclosure. And E gets at that. Right. So I guess we don't even look at legislative history unless there's some ambiguity. So we're looking at the wording of the statute. It says a prohibition on providing false and misleading information. What you're saying is that excludes, there's no cause of action for a material omission. Certainly not when that omission is not of information required to be disclosed under subsections A, B, or C, which is the other part of E. And there's no suggestion here that the existence of an H-2A job is something that has to be disclosed under A, B, or C. That's just not what the statute is about. And it shows that what this case really is is sort of an effort to use the AWPA as a backdoor way of enforcing a set of regulations that do not have a private cause of action because they're enforced by administrative action by the Labor Department. I guess what I wrestle with there is, when I look at the statute, it seemed to me that there very much was an intention to inform these former workers so they would have an opportunity to appear that there were jobs available. If you had, say, falsely advertised that these jobs were paying $2 an hour, that would, of course, dissuade them from appearing. On the other hand, a failure to tell them that you're paying $12 an hour may have a similar effect. How would you respond to that? I would say that Congress was, in this statute, and again, the H-2A regulations have their own disclosure requirements, but in this statute... The regulations were promulgated, though, pursuant to statute, were they not? So, in effect, they are implementing what at least the agency thinks Congress had in mind. Well, they were promulgated under the Immigration and Nationality Act. As we have frequently found, that's what Congress has also passed. Well, sure, but they are not an implementation or an interpretation of the AWPA. And to answer Your Honor's hypothetical, a provision of the AWPA has very specific requirements about what information you have to disclose, to whom you have to disclose it. Right, but isn't the policy you only want a minimal number of H-2A workers? You only do it to fill in where you don't have enough domestic workers. Yes. So if you're not telling domestic workers, oh, by the way, we're paying these H-2A workers $12 an hour, and you may be getting less or you may not be getting these choicier positions, isn't that a material omission? I mean, because you're doing that because you're trying to defeat the whole thing. You're going to have less domestic workers, and then you can hypothetically then have more H-2A workers that you're paying at a preferential rate. And I think that's what they're getting at. Well, in fact, just to address the factual premise, there's in fact very little incentive for an employer to do that because the H-2A workers are actually more expensive. I would think, yeah, I mean, it doesn't make sense, but on the other hand, the whole point that we're at now, right, is a preliminary stage, whether or not the district court erred in making this finding that you're taking umbrage to, right, in finding for this particular class, the inaccurate information class. Right, and what I would point you to, again, is that the language of the statute and that it's information required to be disclosed by ABNC. So even if you think that in some contexts an omission could constitute providing false or misleading information, which is a stretch of the language, it would have to be information about something that's required to be disclosed under ABRC. My view is that because the regulations, which may bear on what has to be disclosed and where it's disclosed are in a different statute, that can't be considered in construing this particular act. Is that correct? That's right. I mean, the secretary does not have delegated authority to interpret this statute, and she wasn't exercising that authority. So there are two federal agencies dealing with different laws, but their functions require an interaction, like the Fish and Wildlife Service and the EPA frequently deal with one another. You're suggesting that the regulations of the one have nothing to do with the regulations of the other and how they're enforced. I mean, certainly Plaintiff 7 made any argument that you have to look to the regulations, and I think it would be anomalous where you have a statute where Congress quite deliberately committed enforcement of it and its regulations to the agency to then use this totally separate statute that has a private right of action as a backdoor way of enforcing those regulations. If I could reserve the remainder of my time, please. Ms. Isley. Is it Isley or Isley? Isley. All right, good. Thank you. May it please the Court, I am Lori Isley with Columbia Legal Services, and along with our co-counsel Schrader, Goldmark, and Bender, we represent the farmworker appellees. I want to make two primary points this morning. First, while this Court should decline to review the merits of the inaccurate information claims, as this Court did in Abdullah, the district court's rulings may be easily affirmed, and that's for two reasons. First, the Agricultural Worker Protection Act requires growers to provide truthful information beginning with recruitment about the existence of employment. I gather we've been talking about this omission concept. Yes. What's the best argument that you have that when the statute speaks of an affirmative misrepresentation, that an omission which has the same effect is likewise covered? There are many cases, Your Honor. They're actually cited on page 28 and 29 of our brief that recognize this concept specifically. That when, and in the H-2A context, the failure to provide information is just as misleading as an affirmative misrepresentation. So there's the Perez-Farias case, in which applicants were not told that there was free transportation available, and the Court held that is false or misleading under APA. There's the case of Vega v. Norse, where the workers were not told that they might be transferred to another farm, and the Court there, again, specifically said, silence in that circumstance is false or misleading. There are a number of other cases following the line. Okay, so Mr. Miller's argument, as I understand it, and I may have gotten it wrong, is that the A through D, I guess, subsections, have affirmative obligations, and so this general prohibition against not providing false or misleading information, that subsection E talks about false and misleading information having to do with subsections A through D. What's your response to that argument? That's correct. What subsection E does, it requires a grower to provide truthful information about the information referred to in those subsections, so about the term of employment, about worker protections, about pay information. It is a stand-alone provision that does more, and it requires growers to be truthful, beginning with the recruitment process, and that's exactly what the Ninth Circuit found in the Barajas case, looking specifically at this section, 1831, and finding consistent with the legislative history, the duty here is to give truthful information beginning at recruitment. So if you could not make a positive statement without including something that was not specifically covered, in other words, if you're going to be truthful, if you omit to state something and it would not then be complete or truthful, you have to include the omitted part of it. Is that correct? Yes, that's correct. So here the statute requires a grower to provide truthful information about the existence of employment, and that's exactly what did not happen here. So we have the example of Modesta Perez. She traveled more than 65 miles round-trip three times, dressed for work, put her infant in daycare, and was not told about the $12-an-hour jobs. She finally got a phone number so she could call and check back in not to drive 65 miles. She was called, reported for work, and when she got there, no work for her. Never told about the $12-an-hour jobs. In this context, yes, that is false and misleading. Go ahead. If we agree with the grower's interpretation of the statute, do you agree that it cuts the ground out from under the certification order? I believe it would, Your Honor, but I don't believe that the court has to reach that question today. All the court needs to find is did the district court properly conclude there are common questions. So whether you answer this question, whether the district court ultimately answers this question. Whether there are common questions of law depends on the construction of the statute, doesn't it? But just as this court in Abdullah looked at the particular legal issue, it does not have to determine the legal issue one way or another to determine whether or not common questions predominate. Here they obviously do because the answer to this question, whether or not there is a duty under APA to tell the workers about the jobs that existed, that answers the question. It is a common question, and it predominates. Therefore, it's appropriate and was appropriate for the district court to certify the class. Just touching briefly on some of the other points raised, the Washington state law also clearly recognizes omissions, and the district court here did the appropriate analysis. What's the best citation for the Washington requirement to cover omissions? The best citation, I think, Your Honor, is the Hanlon case. There are other cases we cite in the brief, but the Hanlon case is particularly helpful, and that case actually came out after the district court gave its ruling in this case, but it shows how correct the district court was because it identifies the two particular questions. Was there an injury here? Yes. Being deprived of the information is an injury, and it looks at whether that was caused by the defendant's conduct. Just as the credit reporting agency did not give the prospective renters the information from their credit report, that is exactly what happened here. Another point of Hanlon that's really helpful is the court there found, even if the prospective renters would not have obtained the apartment, even if they could not show that, the court found the deprivation of the information itself constituted the injury, and that's exactly what we're saying here. Very briefly on the equal pay claims, the district court was also correct there, and I want to make two important points about the factual evidence before the court. The payroll evidence is the best evidence we have. It is the best evidence on liability. It is the best evidence on damages. What's your response to Mercer's comment that the pay here was based on time cards and everybody's different? How do you respond to that? Two very important points here, Your Honor. First of all, there are no time cards in the record before the district court. In fact, when Mercer sought summary judgment on the equal pay claims, the evidence it presented to the court are the payroll audit reports, the same exact evidence the workers relied on in their expert report to show the underpaid wages. And those documents are in the record at excerpt of record 734 and 736. They are bait-stamped the same exact page numbers as the workers' evidence at workers' excerpts of record 192 and 193. So from that we should draw, I gather, that the contention that time cards are the only evidence is contradicted by what was placed in evidence, right? What was before the district court. Here's one more example that really underscores that point. The workers put on evidence that there was over $35,000 in underpaid wages for work tying. The workers were tying the grapevines to the supports. It's undisputed this work was covered by the contract. It was performed almost entirely in March and April. And that work was not paid. There is not one document in the record that refutes this. And as we told the district court, there are no time records for that period. And that is supported by the vineyard manager testimony, Mr. Gomez, who basically says they did not start keeping track until the foreign workers started in May. They realized they couldn't get all the work done and they started rotating in domestic workers and keeping track of the work. That's at excerpts of record 80 and 82. So there is no time card that would demonstrate or refute the evidence the district court considered, and that is for the task of tying a loan, the workers were underpaid $35,000. So the allegation that time cards are what it relied on is simply false. Is that what you're saying? Our best understanding, Your Honor, from the record is they did start using these records, the time card method, at some later point in time. Okay. But not the time framework that is covered by this litigation? Our review of the records is they didn't start until mid-May. So that's almost two months into the contract period, Your Honor. And one last case I wanted to bring to the court's attention. It just came out one month ago today. That's the Vaquero case. And in that case, the court looks at how the workers were going to put forth their information that they weren't paid for doing non-sales tasks. And the court there basically says, and I think it's an important point to consider here, if there are questions about the damages that ultimately come from this, the district court is well-suited to structure those proceedings, whether it be on the inaccurate information claim or the equal pay claims. And those questions, as they were premature in Vaquero, are really premature here. The district court is well-suited to structure the damages phase of this litigation. So if there are no further questions, we respectfully request this court affirm the court's certification. Very well. Thank you very much, counsel. You have some rebuttal time. Thank you, Your Honor. I'd like to begin with a couple points on the statute. And in particular, if you look at subsection A of the statute, which is the basic disclosure requirement, that requires the disclosure when an offer of employment is made to such worker. And so that's significant, both because what we're talking about here is people who were not offered employment, and it also illustrates that this is a statute about abusive recruiting practices. It is not about the failure to recruit people. Oh, one minute. As I understand it, the statute requires you to offer employment to certain people who had worked before. Is that right? No, it does not. The H-2A regulations require you to offer work. So you're saying in this setting it has no bearing, right? The Agricultural Workers Protection Act does not require that. And that actually illustrates that the AWPA, the plaintiffs would have it cast as a mechanism for enforcing the H-2A program, but the AWPA applies to all kinds of jobs. It applies to all farmers. And so if you accept their interpretation of it, that means that any farmer who has a job that it doesn't tell people about is violating the AWPA, and that simply is not a tenable reading of the statute. There was a discussion of the State Consumer Protection Act. The district court acknowledged that there was variation among the members of the class in whether they could show any injury, and it thought that that went only to damages, but the Washington Supreme Court has expressly held, in Seattle Rendering Works, that injury is an element of liability under the statute. Your time is up, but just wrap it up quickly, okay? And then we'll wait for your time. Thank you. And if I could just conclude by saying that on the equal pay claim, there was a discussion of payroll records and accounting cost records. Neither of those records shows what particular tasks individual workers did at a particular time, which is the sort of individual evidence that you would need to have to adjudicate that claim. Okay, thank you. We thank both counsel for their arguments. They've been very helpful. The case just argued is submitted, and the court stands adjourned for the week.
judges: Tashima, M. Smith, Kobayashi